UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**MAYFIELD CONSUMER PRODUCTS, LLC**                                                    **PLAINTIFF**

v.                                                                                                              No. 5:24-cv-91-BJB

**ALTIMATE CONTROLS, LLC, ET AL.**                                                    **DEFENDANTS**

\* \* \* \* \*

POST-HEARING MEMORANDUM OPINION

The Court held a remote hearing in March 2025 to address MCP's motion for leave to amend (DN 24) as well as FANUC's and Wilkens's motions to dismiss (DNs 13 & 22). For the reasons stated on the record and further explained here, the Court granted in part and denied in part MCP's motion for leave to amend, and granted both motions to dismiss.

I.     MCP'S ALLEGATIONS

MCP manufactures candles in Kentucky. According to the First Amended Complaint (DN 24-1), whose well-pled allegations the Court accepts as true at this stage, MCP wanted to automate its candle packaging and handling. So it approached Altimate Controls and the owner, Patrick Wilkens, for a robotic system to meet the factory's needs. ¶¶ 12–14. For MCP, any proposed system needed to meet certain "success criteria"—metrics like "changeover time" and "production speed." ¶ 13. So the firm's representatives told Wilkens about these criteria and asked whether Altimate was up to the task. *See id.*; Ex. C (DN 24-1) at 39–40 (emails between MCP representative and Wilkens documenting the success criteria); Ex. D (DN 24-1) at 41–61 (report detailing MCP's success criteria). Wilkens responded that the job would pose "no problem" and be "easy compared to" the "robotic baking equipment" that Altimate had recently designed for another customer. First Amended Complaint ¶ 16. More specifically, Wilkens noted that Altimate's system could easily handle a baseline quantity of MCP's products and that, with "some programming changes," a greater amount would be "doable." ¶ 17 (citing Ex. E (DN 24-1) at 63 (email from Wilkens to MCP representative)). And Wilkens stated that the system would match MCP's "normal production speeds" by handling "54 pieces per minute per [production] line." ¶ 18 (citing Ex. F (DN 24-1) at 70).

MCP then sought the opinion of FANUC America Corporation, a firm that supplied Altimate with components for the automation system. ¶¶ 9, 19. A FANUC representative inspected MCP's production lines and advised that FANUC's robotics would meet MCP's requirements. ¶ 19. Afterward, the parties attended a video call in which Wilkens and two FANUC representatives presented an "automation system solution simulation" to MCP. ¶¶ 20–22; Ex. G (DN 24-1) at 72. That simulation,

1

according to MCP, indicated that the automation system, once installed, would conform with MCP's success criteria. ¶¶ 22, 39–42. Wilkens also affirmed in an email to MCP that the proposed system would have a changeover time of less than fifteen minutes, create no aesthetic defects, and achieve "capability of meeting MCP's agreed rate at quality." ¶ 23 (citing Ex. C. at 39).

MCP, Altimate, and FANUC reached a deal for Altimate to install the agreed system for MCP using FANUC parts. ¶ 24. But MCP was dissatisfied on delivery because the system failed to meet its success criteria. ¶¶ 29–35. So MCP sued Wilkens, FANUC, and Altimate for fraud and negligent misrepresentation; FANUC and Altimate for breach of warranty; and Altimate for breach of contract. ¶¶ 36–71. Altimate answered the Complaint (DN 11), FANUC and Wilkens moved to dismiss for failure to state a claim (DNs 13 & 22, respectively), and MCP moved to amend its Complaint (DN 24)—attaching its First Amended Complaint (DN 24-1). The Court held a hearing on these motions on March 26, 2025, issued an oral ruling on all three motions, and promised that this written opinion further explaining those rulings would follow.

## II. MOTIONS FOR LEAVE TO AMEND AND TO DISMISS

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend [the] complaint." *Bergner v. Derr*, No. 3:19-cv-593, 2020 WL 4736470, at *1 (W.D. Ky. Aug. 14, 2020) (quotation marks omitted); *see also Ellison v. Ford Motor Co.*, 847 F.2d 297, 300–01 (6th Cir. 1988) (strongly suggesting the same). Despite Rule 15(a)(2)'s "liberal amendment policy," a court may deny a motion for leave to amend when the proposed amendment would be futile. *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (citations omitted). Amendment is futile "if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)). As discussed during the hearing and below, MCP's amended fraud allegations against FANUC and Wilkens couldn't withstand a motion to dismiss because they fail Rule 9(b)'s heightened pleading standards. And neither would MCP's warranty allegations against FANUC, because they fail Rule 8's ordinary pleading standard. So the Court denied MCP's motion to amend with respect to those FANUC and Wilkens but granted as unopposed the motion to amend with respect to Altimate.[1]

The motions to dismiss faulted MCP's original complaint for stating generic and conclusory claims of fraud and breach of contract. *See* FANUC MTD at 2–3;

---

[1] Altimate didn't oppose amendment and moved for dismissal only after MCP filed a court-ordered amended complaint. *See* DNs 45 (amended complaint) & 49 (motion to dismiss). Because this opinion memorializes the decision rendered at the March 2025 hearing, which preceded the amended complaint Altimate now seeks to dismiss, the Court will address the subsequent motion to dismiss in a subsequent order.

2

Memorandum in Support of Wilkens's MTD (DN 22-1) at 2–6.  Those pleadings, according to the two moving Defendants, alleged only that "an *unspecified individual*, at an *unspecified time*, and at an *unspecified location* made some general indication that a certain robot … would meet MCP's *unspecified* 'requirements and success criteria.'"  FANUC MTD at 2; *see also* Memorandum in Support of Wilkens's MTD at 2–6 (highlighting purported deficiencies).  The proposed amended complaint, by contrast, adds particularity to MCP's previous pleadings, raises negligent-misrepresentation claims against all Defendants, and attaches supporting exhibits.  *See* Motion for Leave to Amend (DN 24) at 5; First Amended Complaint ¶¶ 64–71.  But according to FANUC and Wilkens, these allegations still fail to set forth non-conclusory facts that indicate they defrauded, breached a warranty with, or made negligent misrepresentations to MCP.  *See generally* FANUC Response (DN 31); Wilkens Response (DN 32).

As discussed during the hearing, the Court agrees that MCP's Amended Complaint fails to sufficiently plead fraud and negligent misrepresentation against FANUC and Wilkens, and breach of warranty against FANUC.

**A. Fraudulent & Negligent Misrepresentation.**  MCP's allegations against Wilkens and FANUC fall short of the heightened pleading standard imposed by Federal Rule 9(b).  And even if they described "with particularity" what MCP alleges took place, the events they describe don't amount to fraud or actionable misrepresentation under ordinary pleading standards under Rule 8.  *See* FED. R. CIV. P. (8)(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  To show fraud in conformity with Rule 9(b)'s requirements, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (citation omitted).  Like the fraudulent-misrepresentation claim, MCP's negligent misrepresentation claim "must meet the heightened pleading requirements of Rule 9(b)."  *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 644 (W.D. Ky. 2018).

In hopes of meeting this standard, MCP alleges that Wilkens "represented on numerous occasions that Altimate" was capable of designing and installing the system to MCP's satisfaction.  First Amended Complaint ¶ 37.  And MCP asserts that FANUC, for its part, "inspected MCP's production lines" and "confirmed that FANUC's robotic systems would meet MCP's … requirements."  ¶¶ 38, 40.  Last, MCP argues that both Wilkens and FANUC falsified their abilities and included a knowing misrepresentation of fact in their visual schematic.  ¶¶ 39–42.

To the extent such promises were memorialized in valid contracts, the system's failures would likely amount to breach.  But here MCP seeks to go further and hold the Defendants liable for fraud and negligent misrepresentation.  That requires more: "Only in narrow circumstances can opinions or predictions form the basis for fraud,

3

such as where 'the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham.'" *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 536 F. App'x 558, 563 (6th Cir. 2013).

MCP's allegations fail because, even if they were "particula[r]" enough to get past Rule 9, they describe ordinary commercial mistakes rather than actionable fraud under Rule 8. Each of the statements at issue—that the robotics would be "no problem" and "easy compared to robotic baking equipment," "handle … 54 pieces per minute per line," "complete fifteen minute or less changeovers for all Altimate robots," and meet aesthetic and quality standards—was a prediction about future performance, not a description of past events. First Amended Complaint ¶¶ 16–18, 23. And a "claim for fraud under Kentucky law also must relate to an existing or past fact. If the alleged misrepresentation relates to a future promise or an opinion of a future event, then it is not actionable." *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 444 (6th Cir. 2014) (quotation marks omitted). The mere fact that Wilkens's and FANUC's statements proved overly optimistic does not render them fraudulent. Many predictions made in good faith turn out to be wrong; error alone does not establish, and may not even imply, that the prognosticator *knew* it was false or was reckless in making that prediction.

In similar situations, courts have held that such forward-looking statements—assuming they weren't known to be false—amount only to opinions or sales puffery, not fraud. In *U.S. Achievement Academy v. Pitney Bowes*, for example, the defendant—a seller of printing machines—presented a sales brochure to the buyer-plaintiff indicating that a particular printing system could "'handle up to a million pages a month' with 'unmatched reliability, high productivity and economic cost savings.'" 458 F. Supp. 2d 389, 395, 397 (E.D. Ky. 2006). Dissatisfied upon delivery, the plaintiff sued Pitney Bowes for fraud and other torts. In dismissing the fraud claim, the Court held that the printing company's statements regarding quality and efficiency reflected "an example of opinion and sales puffery" incapable of "support[ing] a fraud claim." *Id*. at 397.

The allegations here closely track those in *Pitney Bowes*: both involve buyers of industrial machinery suing for fraud because a product failed to meet the buyer's standards. But, as other courts have recognized, "promises of efficiency and reliability 'cannot form the basis for a fraud claim'" because they reflect statements of opinion or sales puffery. *Counts v. Gen. Motors, Inc.*, 237 F. Supp. 3d 572, 597 (E.D. Mich. 2017) (quoting *Ram Int'l, Inc. v. ADT Security Servs., Inc.*, No. 11-10259, 2011 WL 5244936, at *6 (E.D. Mich. Nov. 3, 2011), *aff'd*, 555 F. App'x 493 (6th Cir. 2014)).

The statements Wilkens and FANUC made to MCP regarding the candle-packing machine's capabilities neither "incorporate[d] fals[e] past or present facts" nor were they "an obvious sham." *Morris Aviation*, 536 F. App'x at 563 (quotation marks omitted). Although Wilkens's and FANUC's statements proved mistaken (as did the visual simulation, apparently), MCP's corresponding allegations fail to

plausibly state a claim for fraud because they lack sufficient factual allegations that either Defendant acted with intent to deceive.

True, as MCP noted, it needn't plead the Defendants' mental states with particularity: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). But "conclusory allegations … that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001); *see also Republic Bank & Trust v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) ("[T]he plaintiff still must plead facts about the defendant's mental state" that "make the state-of-mind allegation plausible on its face.") (quotation marks omitted). MCP's fraud claims against Wilkens and FANUC are deficient because they rest purely on the system's eventual failure to meet the success criteria, and not on any plausible factual allegations indicating that FANUC and Wilkens knew or should've known the predictions were false at the time. Nowhere does the proposed amended complaint, for example, offer any basis to think "the speaker" made this representation despite knowing "facts which would preclude such an opinion…" *Omnicare, Inc. v. Laborers Dist. Council Construction Industry Pension Fund*, 575 U.S. 175, 191 (2015) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 109 (5th ed. 1984)). Nor has MCP alleged that these Defendants withheld information that would've caused MCP to question or qualify these predictions. *Id.* As clarified during the hearing, the factual underpinnings of MCP's fraud claims consist solely of the system's failure to meet success criteria and MCP's disbelief that its counterparties didn't realize this. That's not enough to allege a plausible case that, if true, would entitle MCP to recovery on these claims.

MCP's negligent-misrepresentation claims against FANUC and Wilkens fail for the same reason. "[T]he negligent- and fraudulent-misrepresentation torts are parallel, and both must relate to misrepresentations of material fact. Thus like the cause of action for fraud, mere opinions and predictions are not actionable under a negligent-misrepresentation theory." *Morris Aviation*, 536 F. App'x at 568 (quotation marks omitted). As discussed above, FANUC's and Wilkens's representations to MCP were predictions rather than misstatements of material fact. So these allegations don't give rise to negligent-misrepresentation claims. *See id*; *Papa John's Int'l, Inc. v. Dynamic Pizza, Inc.*, 317 F. Supp. 2d 740, 748–50 (W.D. Ky. 2004) (statements that a franchisee "*could expect*" a certain level of sales and "that sales *would definitely increase*" in a given store were "merely predictive" and not negligent misrepresentations).

**B. Warranty.** Unlike MCP's fraud claim, its breach-of-warranty claim against FANUC is not subject to a heightened pleading standard. But like the fraud claim, MCP's warranty claim fails because it relies on forward-looking opinions that are insufficient to establish warranty. MCP alleges that FANUC established an express warranty by presenting the automation simulation and breached that warranty when the actual system underdelivered. First Amended Complaint ¶¶ 56–

5

61.² But FANUC's words and deeds, even as characterized by MCP and taken as true, would not establish an express warranty under Kentucky law. "A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised." *Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 904 (W.D. Ky. 2007) (quotation omitted). Under the "majority rule," which Kentucky has adopted, courts require a warranty of future performance to be "unambiguous, clearly stated, or distinctly set forth." *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 765 (E.D. Ky. 2020) (quotation marks omitted). In contrast, "mer[e] puffing or a statement of opinion … would not create an express warranty." *Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 891 (Ky. Ct. App. 2001) (quotation marks omitted); *accord Plumbers Supply Co. v. Lanter*, 133 S.W.2d 739, 741 (Ky. 1939) ("A mere expression of opinion … cannot be construed as a warranty.")

Here, FANUC forecasted that the custom automation system would meet MCP's success criteria. And FANUC, according to MCP, established an express warranty through the use of a model: the automation system simulation. *See* MCP Reply (DN 33) at 10. MCP is right that, in certain circumstances, a "sample" or "model" *can* establish an express warranty. *See* KY. REV. STAT. § 355.2-313(1)(c) ("Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."). But FANUC's presentation to MCP lacked a crucial element that precludes it from establishing warranty. The simulation didn't "expressly provide some form of guarantee that the product [would] perform in the future as promised." *Freudenberg-Nok*, 487 F. Supp. 2d at 904 (citation omitted). Any alleged warranty certainly wasn't "unambiguous, clearly stated, or distinctly set forth," *Corder*, 473 F. Supp. 3d at 765 (quotation marks omitted)—it was inferred from a digital presentation. The simulation didn't reflect a guarantee or a representation of historical fact, but rather a prediction or simulation of a future state of affairs. Because FANUC's predictions and simulation, considered in the light of the plausibly alleged factual circumstances, reflect mere incorrect "expression[s] of opinion" or puffery—rather than misstatements of the company's knowledge—MCP's breach-of-warranty argument against FANUC fails as a matter of law. *Lanter*, 133 S.W.2d at 741.

MCP's warranty claim fails for the separate and sufficient reason that no privity of contract existed between MCP and FANUC. "Under Kentucky law, … claims for breach of express or implied warranties may proceed only where there is privity between the parties." *Waterfill v. Nat'l Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007); *see also Chancellor v. Church & Dwight Co.*, No. 5:20-cv-145, 2021 WL 4524177, at *5 (W.D. Ky. Oct. 4, 2021) ("Under Kentucky law, privity of contract is an essential element of a claim for breach of warranty.") (quotation marks

---

² MCP asserts an implied-warranty claim as well, but only against Altimate, not FANUC or Wilkens. *See* First Amended Complaint ¶ 61.

omitted). Even on MCP's telling, no privity of contract existed between the companies. *See* MCP Reply (DN 33) at 10–11.

It contends, however, that privity of contract is not required to hold a seller responsible for express warranties. In support of this argument, MCP cites a couple non-binding, exceptional cases. *Id.* (citing *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 740 (W.D. Ky. 2013); *Levin v. Trex Co., Inc.*, No. 3:10-cv-692, 2012 WL 7832713, at *3 (W.D. Ky. Mar. 5, 2012)). *Naiser* drew its reasoning from *Levin*: "Kentucky courts have traditionally interpreted Kentucky statutory language as requiring privity for actions for breach of implied and express warranties," but "Kentucky courts have not been faced with facts similar to those here, where the manufacturer has expressly made warranties directly to the intended consumer of the product." *Levin*, 2012 WL 7832713, at *2–4.

The *Levin* opinion "reasoned that 'Kentucky courts would hold that an express warranty action could be maintained in this case' because 'the manufacturer's written warranty expressly stated that its warranty ran directly to the intended consumer.'" *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 674–75 (W.D. Ky. 2022) (citation omitted). In those circumstances, the court "consider[ed] how other jurisdictions have dealt with direct representations to consumers" and eschewed the privity requirement for breach-of-warranty claims. *Levin*, 2012 WL 7832713, at *3. "The *Naiser* court extended *Levin*'s reasoning to reach cases where the warranty didn't explicitly identify the end consumer but 'was certainly intended for those who would purchase and use [the product].'" *Garvin*, 616 F. Supp. 3d at 675 (recognizing the limits of the holdings of *Levin* and *Naiser*).

As federal courts have since recognized, the *Levin* Court was wrong to take its *Erie* guess: "Though the Western District of Kentucky explicitly considered other jurisdictions' rulings in extending claims for breach of express warranty … the Kentucky Supreme Court cautioned against such modifications." *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1023 (E.D. Ky. 2015). Instead, "'the scope of warranty protections in commercial transactions is a matter of public policy that has been expressly decided by the Kentucky General Assembly.' Any extension, modification, or repeal of the privity requirement 'is a question left to the legislature.'" *Id.* (quoting *Complex Int'l Co. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006)). *Naiser*, therefore, "is not supported by binding precedent and is premised on overly broad interpretations of other cases applying Kentucky law…. [T]he appropriate course is to decline to expand Kentucky law based on speculation regarding trends in the law and perceptions of fairness." *Simpson*, 397 F. Supp. 3d at 967–68 (holding that "the Kentucky Supreme Court's strict application of the privity requirement applies"). And even if *Levin* and *Naiser* cohered with Sixth Circuit precedent, the facts as alleged by MCP don't involve an express consumer warranty, unlike *Levin*, or a third-party beneficiary, unlike *Naiser*. So the Court declines to apply either district-court decision to this dispute.

The Sixth Circuit has in fact "succinctly summarized the privity requirement in warranty claims: 'Under Kentucky law, liability for breach of warranty is governed by the terms of the contract and statutory provisions of Kentucky's Uniform Commercial Code.'" *Id.* at 964 (cleaned up) (quoting *Waterfill*, 215 F. App'x at 405). That means in cases (such as this one) involving "no contract between the parties, Kentucky Revised Statutes § 355.2-318 controls the cause of action." *Id.* (cleaned up); *see also Taylor*, 130 F. Supp. 3d at 1021–22 ("Though Kentucky's highest court has not explicitly ruled whether privity is required for breach of express warranty, the Sixth Circuit has interpreted Kentucky law to so require.") (citing *Waterfill*, 215 F. App'x at 405).

Here, MCP doesn't identify any contract it entered with FANUC. *Accord* FANUC Response at 15 ("Here, there is still no dispute, even in the proposed Amended Complaint, that MCP and FANUC never entered … a contract."). So § 355.2-318 governs whether and when to extend a warranty to third-party beneficiaries. That statute provides only one exception, which typically applies to household personal-injury torts—not "B2B" disputes like this one.[3] No mystery shielded the Kentucky legislature from considering "other alternatives to the [U.C.C. provision], which [would've] extended the concept of privity to allow a broader range of injured persons to assert warranty theories of recovery." *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 768 (E.D. Ky. 2020) (quoting *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999)). Yet the Commonwealth enacted a different version that did not embrace those alternatives.

"[C]ommercial sales law is statutory," and Kentucky's legislature "chose to limit actions for breach of warranty as provided in KRS 355.2-318." *Id.* at 767 (quoting *McLain*, 16 S.W.3d at 327). The Court's role is not "to extend the concept of privity to include those whom the Legislature has not seen fit to protect." *Id.* (quoting *McLain*, 16 S.W.3d at 327). So dismissal of MCP's breach-of-warranty claim is justified for the independent reason that MCP and FANUC lacked contractual privity. *Cf. Christian v. Altaire Pharms.*, No. 5:20-cv-306, 2020 WL 6051255, at *5 (E.D. Ky. Oct. 13, 2020) (denying as futile leave to amend breach-of-warranty claim because plaintiff "fail[ed] to allege an 'essential element' of breach of warranty causes of action: privity") (citation omitted).

---

[3] KRS § 355.2-318, titled "Third party beneficiaries of warranties express or implied," states in full:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

8

## Conclusion

As previously announced, MCP's motion for leave to amend (DN 24) succeeded as unopposed with respect to Altimate and failed as futile with respect to FANUC and Wilkens. So the Court granted FANUC's and Wilkens's motions to dismiss. DNs 13 & 22.